999 So.2d 1255 (2009)
Natasha NICHOLS, in her Capacity as Tutrix of A.N. and C.N., and o/b/o Chadrick Jones, A.N. and C.N., Plaintiff-Appellant
v.
HORSESHOE CASINO, et al., Defendants-Appellees.
No. 43,947-CA.
Court of Appeal of Louisiana, Second Circuit.
January 14, 2009.
*1256 Susan E. Hamm, for Appellant.
Cook, Yancey, King & Galloway, by Robert Kennedy, Jr., Mary D. Bicknell, Shreveport, for Appellees.
Before BROWN, STEWART & PEATROSS, JJ.
PEATROSS, J.
Natasha Nichols brought this action in tort on behalf of Chadrick Jones and as provisional tutrix of her children, A.N. and C.N., who are also the children of Chadrick Jones. Mr. Jones, age 25, was an employee of Horseshoe Casino ("Horseshoe"), who died while at work from an acute asthma attack. Ms. Nichols alleged that Mr. Jones' supervisor refused his request to leave work or get treatment during the time he was having trouble breathing. She claims that this constitutes an intentional act on the part of the supervisor that led to the death of Mr. Jones, thus allowing recovery outside of workers' compensation. The trial court found no evidence rising to the level of an intentional act and granted summary judgment in favor of Horseshoe. Ms. Nichols appeals. For the reasons stated herein, we affirm the judgment of the trial court.

FACTS
Mr. Jones was a new employee in food service at Horseshoe. He had a history of asthma, of which his employer was aware. Mr. Jones' first day of work was to be August 18, 2005; however, on that date, Mr. Jones was in the LSU emergency room for treatment of an acute asthma attack. The following day, Mr. Jones reported to work with a doctor's release and requested of his supervisor, James Nolan, that he be allowed to bring his breathing machine to work with him.[1] Mr. Nolan advised Mr. Earnest Robinson, the supervisor of Mr. Jones' shift on that day, that Mr. Jones had his breathing machine at work.
According to Mr. Robinson's testimony, during the early afternoon, Mr. Jones began having trouble breathing and he noticed Mr. Jones sitting down around 3:00 p.m. Mr. Robinson observed that Mr. Jones was having trouble catching his breath and Mr. Robinson asked if he was okay. Mr. Jones nodded affirmatively. Mr. Robinson alerted Mr. Nolan and the two went to check on Mr. Jones a short time later. Mr. Jones was still having some trouble breathing and Mr. Robinson told him to go relax in the break room. Mr. Robinson testified that he saw Mr. Jones twice thereafter and he did not appear to be in distress. Mr. Robinson testified in his deposition that, on one of these occasions, Mr. Jones was carrying a trash can and did not appear to be having any trouble breathing.
Later that night, at approximately 9:00 p.m., two employees found Mr. Jones sitting in a chair next to a vented doorway. He was having great difficulty breathing and one of the employees, Wanda Whitehurst, went to alert the EMTs on duty. The other employee, Wilford Smith, who has some medical training from his prior military service, stayed with Mr. Jones. Mr. Smith testified in his deposition that Mr. Jones' eyes rolled back into his head and he became unresponsive. Mr. Smith moved Mr. Jones to the floor and talked to him in an effort to keep him conscious. At that point, Mr. Jones was still breathing on *1257 his own, but was clearly in respiratory distress. Mr. Smith further testified that the EMTs arrived within approximately two minutes and the fire department arrived shortly thereafter. Mr. Jones was transported to Christus Schumpert where he later died from respiratory arrest.
Mr. Robinson testified that, after seeing Mr. Jones carrying the trash can with no apparent distress, he did not see Mr. Jones again until he was advised that Mr. Jones had "passed out." He immediately went to Mr. Jones, arriving after Mr. Jones had arrested and was being attended to by the paramedics. Mr. Robinson testified that he left the scene and went to the breakroom because he had never seen anyone in that condition and it was "scary."
Mr. Smith also testified that he heard "rumors" that Mr. Robinson had refused the request of Mr. Jones to go home or to get treatment. He testified that a "Mr. Lee," who has not been located and no longer works at the casino, told him that he had heard that Mr. Robinson would not let Mr. Jones go home, but that, when questioned about it, Mr. Robinson had denied that he had refused to let Mr. Jones go home.
Mr. Smith further testified that, since Ms. Whitehurst, Mr. Nolan and Mr. Robinson were involved in the incident, under company policy, they would have been required to fill out a written report of the incident. There were no reports provided by Horseshoe from Mr. Smith, "Mr. Lee," Ms. Whitehurst or Earnest Robinson.
As previously stated, Horseshoe filed a motion for summary judgment asserting that there was insufficient evidence of any intentional act and that Ms. Nichols' remedy was limited to workers' compensation. The trial court agreed and granted the motion and this appeal ensued.

DISCUSSION
Ms. Nichols assigns the following errors on appeal (verbatim):
1. Repeated denial through the day of the requests of an employee with a known history of asthma and who is having an asthma attack developing into status asthmaticus is substantially certain and inevitable to result in injury or death to the employee.
2. A defendant/employee's failure to provide pertinent investigative reports after representation that all reports had been provided warrants a continuance in order to allow Plaintiff to obtain the information from the defendant and/or investigate the circumstances around the failure of defendant to provide the information prior to dismissing plaintiff by way of summary judgment.

Assignment of Error Number 2: Production of Documents
We first address Ms. Nichols' second assignment of error as it deals with discovery of documents that she claims were vital to her opposition of the motion for summary judgment. Ms. Nichols sought a continuance of the motion for summary judgment, asserting that Horseshoe had failed to produce some of the investigative reports of the incident; and, therefore, she should have the opportunity to review this necessary discovery.
Horseshoe counters that all investigative reports in its possession had been produced and further asserts that it did not and does not have any incident reports from Mr. Smith, Mr. Lee or Mr. Robinson.
We note, however, that Ms. Nichols took depositions of all persons involved in the incident. Furthermore, Horseshoe complied with the request for production of documents and maintains that it does not *1258 have in its possession any other incident reports. We, therefore, find no error in the trial court's denial of the continuance for any further discovery.

Assignment of Error Number 1: Granting of Summary Judgment
Appellate courts review summary judgments de novo under the same criteria that govern a district court's consideration of whether summary judgment is appropriate. Costello v. Hardy, 03-1146 (La. 1/21/04), 864 So.2d 129; Schroeder v. Board of Supervisors of Louisiana State University, 591 So.2d 342 (La.1991). A court must grant a motion for summary judgment "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." La. C.C.P. art. 966(B). Summary judgment procedure is favored and is designed to secure the just, speedy and inexpensive determination of actions. La. C.C.P. art. 966(A)(2); Mosley v. Temple Baptist Church of Ruston, Louisiana, Inc., 40,546 (La.App. 2d Cir.1/25/06), 920 So.2d 355. The party opposing summary judgment cannot rest on the mere allegations or denials in his pleadings, but must show that he has evidence which, if believed, could satisfy his evidentiary burden of proof at trial. If he has no such evidence, then there is no genuine issue of material fact, and the movant is entitled to summary judgment. La. C.C.P. art. 966(C)(2); Williams v. Sustainable Forestry 2000, L.L.C., 42,895 (La.App. 2d Cir.1/9/08), 974 So.2d 178.
Under La. R.S. 23:1032(A), workers' compensation is generally the exclusive remedy for an employee who is injured in the course of his employment. Section 1032(B), however, provides an exception to this exclusivity when a worker is injured as the result of an employer's intentional act. LaPoint v. Beaird Industries, Inc., 34,620 (La.App. 2d Cir.5/9/01), 786 So.2d 301, citing Snow v. Lenox International, 27,533 (La.App. 2d Cir.11/1/95), 662 So.2d 818. To determine whether an employer's conduct was intentional, the term "intent" has been defined as meaning that the employer either 1) consciously desired the physical result of his act, or 2) knew that the result was substantially certain to follow from his conduct. Clinton v. Reigel By-Products, Inc., 42,497 (La.App. 2d Cir.9/19/07) 965 So.2d 1006, citing Reeves v. Structural Preservation Systems, 98-1795 (La.3/12/99), 731 So.2d 208. In Clinton, supra, this court explained:
In Bazley v. Tortorich, 397 So.2d 475 (La.1981), the Louisiana Supreme Court determined that an act is considered intentional whenever it is shown that the defendant either "consciously desired" the physical results of his conduct or was "substantially certain" that those physical results would follow from his actions.
* * *
The Louisiana Supreme Court has also set a high standard to satisfy the substantially certain aspect of the intentional act exception. "Believing that someone may, or even probably will, eventually get hurt if a workplace practice is continued does not rise to the level of an intentional act, but instead falls within the range of negligent acts that are covered by workers' compensation." Reeves, supra. The term has been interpreted as being equivalent to "inevitable," "virtually sure" and "incapable of failing." Reeves, supra, quoting Jasmin v. HNV Central Riverfront Corp., 94-1497 (La.App. 4th Cir.8/30/94), 642 So.2d 311, writ denied, 94-2445 (La.12/9/94), 647 So.2d 1110.
*1259 Mere knowledge and appreciation of a risk does not constitute intent and gross negligence is insufficient for the intentional act exception. Reeves, supra.
In addition, this court has recognized that the injured party's own negligence prevents an incident from being substantially certain. Clinton, supra.
As stated, Ms. Nichols argues that the actions of Horseshoe through its supervisor(s) rise to the level of an intentional act bringing this action outside the confines of the exclusive remedy of workers' compensation. Ms. Nichols emphasizes that intent is not limited to instances where the consequences are desired and argues that Mr. Robinson's actions and knowledge reveal that he was aware that Mr. Jones' not receiving medical treatment for his asthma was substantially certain to lead to his injury or death.
Ms. Nichols further asserts that Horseshoe's policy prohibits the employer from denying an employee the right to seek medical treatment and that EMTs are available 24 hours a day at the casino. She maintains that Mr. Robinson saw Mr. Jones several times throughout the afternoon and knew that he was having breathing trouble. She further asserts that Mr. Robinson knew that Mr. Jones' condition was worsening and that he refused Mr. Jones' request to go home or for treatment. In support of this assertion, Ms. Nichols points to the deposition testimony of Mr. Smith who testified that he heard rumors that Mr. Robinson had denied Mr. Jones' requests. Ms. Nichols further argues that Mr. Robinson knew Mr. Jones' history of asthma and that an asthma attack could lead to death. She further maintains that Mr. Robinson threatened Mr. Jones with losing his job if he sought medical treatment rather than working. She suggests that, if Mr. Robinson had intended for Mr. Jones to get treatment, he would have sent him to the EMT personnel on duty; but, despite his knowledge that Mr. Jones' condition was worsening, Mr. Robinson did not send him for treatment.
Horseshoe, however, points to the deposition testimony of Ms. Nichols in which she repeatedly states that she does not believe any actions of Mr. Robinson were intentional and she denies having evidence of any intentional act on his part. Ms. Nichols testified as follows:
Q: What information or facts do you have that Horseshoe or its employees intentionally tried to harm Mr. Jones?
A: I mean, I wasn't there, but just from what the employees were telling us, it might have beennot been their intention, but something probably happened that kind of got out of their control that they couldn't handle.
Q: But do you know of any information about an intentional act, that they intended to harm him?
A: No; because I was not there.
Q: And have you heard from anyone that they intended to harm him, that they decided that they were going to hurt Mr. Jones today?
A: No, ma'am.
Horseshoe further asserts that Mr. Robinson exhibited concern for Mr. Jones by checking on him throughout the day. Finally, Horseshoe emphasizes that Mr. Robinson denied in his testimony that Mr. Jones ever requested to go home or requested medical treatment.
First, we note that the results were not consciously desired by Horseshoe employees as evidenced by Ms. Nichols' deposition testimony disavowing any intent of the employees to harm Mr. Jones. Second, our de novo review of the record reveals no evidence that Mr. Robinson denied any requests from Mr. Jones to go *1260 home or seek treatment, or that he threatened Mr. Jones' job if he sought medical treatment. The only evidence that Ms. Nichols cites in support of this assertion is "rumor" heard by other Horseshoe employees. While we recognize the tragedy presented in this case, we must conclude that the evidence is woefully insufficient to constitute any intentional act or substantial certainty that any act on the part of Mr. Robinson was going to lead to the injury or death of Mr. Jones. To the contrary, the record supports the reasonable conclusion that Mr. Robinson checked on Mr. Jones periodically throughout the day and alerted Mr. Nolan that Mr. Jones was having trouble. After seeing his difficulty breathing, Mr. Robinson even told Mr. Jones to go to the break room. Significantly, at no time did Mr. Jones retrieve his breathing machine to assist himself in breathing.
In summary, while more might have been done to assist Mr. Jones, we find no evidence that any intentional act or omission was committed by Horseshoe employees that would allow recovery for Ms. Nichols outside of workers' compensation for the death of Mr. Jones.

CONCLUSION
For the foregoing reasons, the judgment of the trial court granting summary judgment in favor of Horseshoe Casino, et al., is affirmed. Costs of appeal are assessed to Natasha Nichols, in her capacity as Tutrix of A.N. and C.N. and on behalf of Chadrick Jones.
AFFIRMED.
NOTES
[1] There is a dispute as to whether Mr. Jones attempted to call in sick on this day. Ms. Nichols testified that he did call in and was told he would lose his job if he did not report to work. She claimed that Mr. Jones talked with Earnest Robinson, Mr. Jones' supervisor on that shift. Horseshoe notes that Mr. Robinson did not come in to work until after Mr. Jones came to work on that day, so it was impossible for Mr. Robinson to have taken a call from Mr. Jones. There is no other evidence that Mr. Jones called in that day.